J-A25031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES W. SCOTT, JR. AND CATHARINE M. SCOTT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| SUNOCO PIPELINE, L.P. | : | |
| Appellee | : | No. 369 MDA 2020 |

Appeal from the Order Entered January 29, 2020
In the Court of Common Pleas of Dauphin County
Civil Division at No(s):  2016-CV-05654-QT

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                          **FILED APRIL 14, 2021**

Appellants, James W. Scott, Jr. and Catharine M. Scott, appeal from the order entered in the Dauphin County Court of Common Pleas, which granted summary judgment in favor of Appellee, Sunoco Pipeline, L.P., in this quiet title action.  We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows:

> [Appellants] are the current owners of 0.48 acres of property located at 41 Woodbine Drive, Hershey, Pennsylvania 17033 ("Subject Property").  On April 29, 1936, then owners of the Subject Property, Martin B. Nye and Agnes M. Nye, entered into a Right of Way Agreement with respect to the Subject Property with Keystone Pipe Line Company ("1936 Easement").  Under the 1936 Easement, Keystone Pipe Line obtained an easement over and through the Subject Property to lay a pipe line, and maintain, operate, repair and remove said line over a portion of the Property.  The easement states that any additional pipelines shall be within 50 feet of any then existing line.  Pursuant to the 1936 Easement, a pipeline was installed on the

Subject Property and was a part of the Mariner East pipeline system.

Prior to the initiation of the instant case, [Appellee, the successor in interest to Keystone,] sought to build a new pipeline, known as Mariner East 2, which was to run parallel to the existing Mariner East pipeline system, including across the Subject Property. … By letter dated June 17, 2015, [Appellee] advised [Appellants] that it intended to exercise its right to lay additional pipelines on the Subject Property pursuant to the 1936 Easement and enclosed payment for [Appellee]'s exercise of its additional line rights, as required by the 1936 Easement.

On July 22, 2016, [Appellants] commenced this action by filing an Action to Quiet Title, requesting that the [c]ourt enter an Order declaring that [Appellee] has no right, title, lien, or interest in [Appellants'] Property beyond the fifty feet in width **and** depth of the existing pipeline and seeking a permanent injunction against [Appellee] asserting any adverse claim to [Appellants'] title in the Property.

(Trial Court Opinion, filed January 29, 2020, at 1-2) (internal footnote omitted) (emphasis added).

On August 22, 2016, Appellee filed an answer with new matter and counterclaims for ejectment, quiet title (in the alternative), declaratory judgment, and breach of contract. Appellants filed preliminary objections to Appellee's counterclaim for breach of contract, which the court overruled on March 3, 2017. On May 17, 2017, Appellants filed a motion for an emergency hearing, requesting an injunction against Appellee from installing the new pipeline beyond 50 feet in depth. Pursuant to Appellants' motion, the court conducted an emergency hearing on May 30, 2017, and ultimately denied Appellants' injunction request. Appellee subsequently constructed the new

pipeline, installing it within 50 feet of either side of the existing pipeline as measured horizontally but at a depth of 118 feet.

On July 30, 2019, the court issued a notice of proposed termination of the case due to docket inactivity. In response, Appellants filed a statement on August 14, 2019, of their intention to proceed. On September 19, 2019, Appellants filed a motion for leave to file an amended complaint in which they sought to raise additional causes of action against Appellee and to join Precision Pipeline, LLC, a contractor involved in the construction of Mariner East 2, as a defendant.[1] Following a status hearing on September 25, 2019, the court entered an order directing the parties to file cross-motions for summary judgment on or before October 25, 2019. Additionally, the court entered an order, by stipulation of the parties, that action on Appellants' motion to file an amended complaint be stayed pending disposition of the summary judgment motions.

Appellee filed a summary judgment motion on October 25, 2019, and Appellants filed a cross-motion for summary judgment on the same day. Following a hearing on the motions on December 20, 2019, the court issued an order and opinion on January 29, 2020, granting summary judgment in favor of Appellee on its quiet title claim, and against Appellants on their quiet

---

[1] Appellants initially filed on September 6, 2019, a combined motion for leave to file an amended complaint and petition for appointment of viewers. On September 10, 2019, the court determined it would not entertain Appellants' motion/petition as these are two separate forms of relief.

title claim. The court also denied Appellants' requests for summary judgment on Appellee's remaining counterclaims. Appellants timely filed a notice of appeal on February 25, 2020. On February 27, 2020, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellants filed on March 17, 2020.

Appellants raise three issues on appeal:

> Whether, in granting summary judgment against [Appellants], the trial judge abused its discretion and [erred] as a matter of law when [the court] held that [Appellee] may install an additional pipeline 118 feet from existing pipelines, even though the easement unambiguously limits the installation of an additional pipeline to a distance of 50 feet.

> Whether the trial court [erred] as a matter of law when it: (1) held that the easement language was ambiguous even though both parties agreed it was not and basing its decision on the sole fact that the parties disagreed, which has been found by appellate courts to be an insufficient basis; (2) failed to take evidence relating to the intent of the parties who signed the easement but instead relied upon facts not of record; (3) failed to apply a single principle of contract interpretation to determine the intent of the parties; (4) denied [Appellants'] request for summary judgment as to Counterclaim 4 Breach of Contract even though [Appellee] did not produce any evidence of facts essential to that cause of action, did not brief the issue, or raise it at oral argument, nor did the Judge address it at all in [the court's] Memorandum Opinion.

> Whether the trial court's findings of fact were manifestly unreasonable when they were not based upon facts of record, and even if they were, which they are not, the court's application of the facts was manifestly unreasonable.

(Appellants' Brief at 4-5).

In their issues combined, Appellants argue the trial court erred in

- 4 -

granting summary judgment in favor of Appellee for several reasons. First, Appellants contend the court erred in determining that the language of the 1936 easement was ambiguous solely because the parties disagreed over the meaning of the phrase "within fifty (50) feet of any then existing line." Rather, Appellants assert the language of the easement is unambiguous, as it is not susceptible to different constructions. Appellants maintain Appellee's attempts to create a different meaning and limit the phrase to a "two-dimensional horizontal plane only" are unreasonable and contrary to the plain meaning of the easement. (Appellants' Brief at 26).

Second, Appellants argue that in granting Appellee's motion for summary judgment, the trial court made findings of fact that went beyond the scope of the evidence in the record. Appellants maintain the court should have held an evidentiary hearing/bench trial to determine the original parties' intent. Appellants assert each party filed summary judgment motions because the parties agreed that the easement was unambiguous, and the plain meaning of the easement controlled. Appellants emphasize that, as a result, neither party submitted evidence of the original parties' intent because neither Appellants nor Appellee felt that was an issue during discovery. Instead, Appellants requested that the court hold an evidentiary hearing if it found the easement's language to be ambiguous, as there would then be a genuine issue of material fact as to the original parties' intent. Appellants allege they also proffered various evidence/arguments concerning intent that they would have

introduced or expanded upon during an evidentiary hearing or bench trial, including, *inter alia*, that: (1) the easement states Appellee is obligated to pay for any damages to crops or fences resulting from the pipeline's construction, showing the original parties' expectation that the surface would be damaged/affected by the installation of the pipeline which was something that would occur only if the pipeline was installed near the surface using conventional trenching methods; (2) if horizontal directional drilling ("HDD") was not invented until 1971, as Appellee claims, then the original parties to the easement could not have intended for the pipeline to be installed at a depth of 118 feet, let alone 50 feet; (3) the original property owners may have wanted to limit the depth of the pipeline to preserve their subterranean mineral rights; and (4) similar easements from the same grantee dating from around 1936 do not include the "within fifty (50) feet" language, demonstrating that the grantors specifically negotiated this language into the 1936 easement.

Third, Appellants argue the trial judge failed to apply "a single principle of contract interpretation" in granting Appellee's motion for summary judgment. (**Id.** at 41). Specifically, Appellants allege the trial court failed to construe the "alleged silence in the contract regarding the absence of the word 'depth'" against Appellee, where Appellee's predecessors drafted the contract and Appellee has "special expertise" in the construction, operation and maintenance of pipelines. (**Id.** at 43).

Fourth, Appellants argue the court erred in granting summary judgment as to Counterclaim 4 (breach of contract) where Appellants did not breach the easement agreement, or cause damages. Additionally, Appellants emphasize that Appellee did not address this issue in its motion for summary judgment or brief, and the court failed to address this issue in its memorandum opinion. Appellants concede that the court's resolution of the quiet title claim, although erroneous, would also effectively resolve Counterclaims 1 (ejectment), 2 (quiet title), and 3 (declaratory judgment). Appellants, however, maintain that it does not resolve Counterclaim 4 (breach of contract) because that claim requires proof of additional elements unrelated to a simple interpretation of the easement agreement.

Finally, Appellants attack the court's factual findings as "manifestly unreasonable." (**Id.** at 45). Specifically, Appellants challenge several of the court's conclusions, including, *inter alia*, (1) the court's claim that Appellants' interpretation of the easement as not limited to the horizontal plane would allow Appellee to build a pipeline "forty-seven (47) feet above ground," despite the easement's utilization of the word "lay" in reference to the placement of the pipeline; (2) the court's assertion that there is no evidence to present at a bench trial regarding the original parties' intent even though it then states that it is going to rely upon evidence gleaned from "the circumstances that could have been known to Mr. and Mrs. Nye in 1936;" (3) the court's claim that there is no reason to believe that the Nyes thought they

had important mineral rights to protect, even though there is no reason to believe otherwise, and (4) the court's utilization of opposing counsel's "one mile from the courthouse" analogy cuts against the court's own reasoning because if people assume one mile from the courthouse is a measure of horizontal distance, then Appellee's pipeline should be limited to 50 feet horizontally and not permitted at a depth of 118 feet. Appellants conclude this Court should reverse and remand the case so that the trial court can consider Appellants' motion to amend their complaint and so Appellants can file a petition for appointment of viewers to award damages for "a *de facto* taking by an entity clothed with the power of eminent domain…." (**Id.** at 55). For the following reasons, we agree that some relief is due.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. **Mee v. Safeco Ins. Co. of Am.**, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

**Miller v. Sacred Heart Hosp.**, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. **Pappas v. Asbel**, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct.

2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary

judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.
>
> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Furthermore, "the same rules of construction that apply to contracts are

applicable in the constructions of easements[.]" *McNaughton Properties,*

*LP v. Barr*, 981 A.2d 222, 227 (Pa.Super. 2009) (citation omitted). "When reviewing an express easement, the language of the agreement, unless ambiguous, controls." *Baney v. Eoute*, 784 A.2d 132, 136 (Pa.Super. 2001). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more tha[n] one sense." *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 662 (Pa.Super. 1999). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside of the contract." *Baney, supra*.

When the language is ambiguous, however, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa.Super. 2001), *appeal denied*, 568 Pa. 702, 796 A.2d 984 (2002). In doing so, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. *Id.*

> Such intention (of the parties) is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made. Moreover, when the terms of an express grant of an easement are general, ambiguous, and not defined by reference to the circumstances known to the parties at the time of the grant, the express easement is to be construed in favor of the grantee, and the easement may be used in any manner that is reasonable.

*Lease v. Doll*, 485 Pa. 615, 621, 403 A.2d 558, 561-562 (1979) (internal quotations and citations omitted). "Whether an ambiguity exists is a question

- 10 -

of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact." **PARC Holdings, supra** (citations omitted). Significantly, a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction. **Betz v. Erie Ins. Exchange**, 957 A.2d 1244 (Pa.Super. 2008), *appeal denied*, 606 Pa. 659, 995 A.2d 350 (2010).

Instantly, the trial court determined the phrase "within fifty (50) feet" was ambiguous. Contrary to Appellants' claims, however, the court did not find the easement's language was ambiguous just because the parties disagreed on the meaning of the phrase. Rather, the trial court found the phrase to be ambiguous because "it is capable of being understood in more than one sense," and "both parties' interpretations are reasonable based solely on the language itself...." (Trial Court Opinion at 4). We agree with the court's conclusion on this matter. **See PARC Holdings, supra**; **Juniata Valley Bank, supra**.

We disagree, however, with the court's analysis of the original parties' intent concerning the phrase at issue. Here, as the court found the phrase "within fifty (50) feet" to be ambiguous, further fact-finding concerning the original parties' intent and the circumstances present in 1936 was required for the court to interpret the easement properly. The court's conclusion that it would be difficult, if not impossible, to determine what Mr. and Mrs. Nye

- 11 -

intended when they entered into the easement in 1936, and the court's attempt to glean this intent from the language of the easement and the limited evidence presented to it, are insufficient. Rather, Appellants and Appellee should have been afforded the opportunity to present evidence on this issue, such as evidence of the language from other easements of that time or proof of the original parties' concerns for their subterranean mineral rights. **See Taylor v. Sailor**, No. 1383 WDA 2018 (Pa.Super. filed August 28, 2019) (unpublished memorandum) (concluding entry of summary judgment was inappropriate where ambiguous phrase "over and across existing improvements" created issue of material fact as to what parties intended for easement).[2] Under these circumstances, genuine issues of material fact remain and the entry of summary judgment was improper. **See Chenot, supra**. Accordingly, we reverse the order granting summary judgment in favor of Appellee and remand the matter for an evidentiary hearing.[3] **See Taylor, supra** (reversing order granting summary judgment in similar circumstances).

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

[2] **See** Pa.R.A.P. 126(b) (explaining that unpublished non-precedential memoranda decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value).

[3] In light of this disposition, we need not address Appellants' remaining issues.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/14/2021