597 A.2d 709

Deanna PORTER, Appellant,

v.

Theodore D. KALAS, His Heirs, Personal Representatives, Successors and Assigns; Steven Takes, His Heirs, Personal Representatives, Successors and Assigns; Ralph Corton, His Heirs, Personal Representatives, Successors and Assigns; D.B.A. Anthony's Jazz Lounge, its Successors, Assigns and Devisees, and Anthony's Jazz Lounge, Inc., a PA Corporation doing business as a PA Corporation, its Successors, Assigns, and Devisees.

Superior Court of Pennsylvania.

Argued June 20, 1991.

Filed Oct. 9, 1991.

Randy L. Rayl, Pittsburgh, for appellant.

George C. Diamantopulos, Pittsburgh, for appellees.

Before POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the order entered September 6, 1990, in the Court of Common Pleas of Allegheny County, denying appellant's motion for post-trial relief, and confirming the order dated June 7, 1990. The June 7, 1990 order followed a non-jury trial before the Honorable Richard G. Zeleznik, and provided:

(1) That final judgment is entered in favor of the Defendants [/Appellees], and the Plaintiff [/Appellant] is forever barred from asserting any right, title or interest in the subject 3 ft. easement running through Lot 18 known locally as 1304 East Carson Street inconsistent with the expressed reservation in a deed from Jane Carey to Bernard H. Rust in 1862 as recorded in Deed Book Volume 157, at page 585 for a distance of 36 ft., and extended thereafter to a depth of 90 ft. by action and conduct of the predecessors in title of both parties.

(2) That the 3 ft. easement in the deed from Jane Carey to Bernard H. Rust in 1862 and excepted in plaintiff's chain of title for 84 years thereafter is a valid reservation of use and possession for the benefit of both parties.

(3) That the remote grantors of both parties extended the said easement to a depth of 90 ft. for their mutual benefit and such is a valid extension.

Appellant raises three issues in her appeal from this order of the trial court.

I. Whether an express easement by reservation or grant was created in favor of the defendants' land to [the] detriment of appellant's land or did appellees only have a permissive license for use which was revocable by appellant at will?

II. Whether an easement by adverse possession or by necessity was created in favor of appellees to the detriment of appellant or was the use of the property a mere license subject to revocation?

III. Whether the easement was enlarged to include the entire length of appellant's property including the second floor or was the second floor usage merely a license and subsequently abandoned?

Before addressing the merits of the issues raised by appellant, it is first necessary to thoroughly review the factual background giving rise to this action to quiet title. The subject of the dispute between the parties is a three-foot wide passageway between two adjoining three-story buildings fronting Carson Street in the South Side section of Pittsburgh. Both buildings have entrances opening into this hallway, in addition to regular storefront entrances along Carson Street. Appellant, Deanna Porter, owns the building numbered 1304 Carson Street, and appellees own the adjoining building, numbered 1306 Carson Street.

The present controversy arose in 1988 when appellant first inspected the passageway and discovered that appellees, who operated a lounge, were utilizing the passageway to receive deliveries, and store beer and food products. Appellant notified appellees to cease further use of the passageway. When appellees asserted their right to continue using the passageway, appellant filed an action to quiet title.

Appellant's building was originally acquired by her parents in 1973, and appellant became sole owner in 1986 by inter-party conveyances and operation of law after the death of her parents. In her quiet title action, appellant maintained that appellees use of the passageway was not

pursuant to any easement, but was rather by permissive license which was revocable at will.

Appellees, on the other hand, maintained their right to use the passageway based upon an express reservation in a deed from Jane Carey to Bernhard H. Rust on December 27, 1862. Reference to this reservation in the Carey to Rust deed was expressly spelled out in appellant's chain of title for eighty-four years, and in appellees' chain of title for seventy-six years.

The remote grantors of each party entered into an uncomplicated party-wall agreement on July 13, 1870. The buildings were constructed along the party-wall so as to preserve the passageway in an enclosed hallway fashion. Both buildings had side entrances cut into the hallway area. After the construction of each building, the passageway was extended from the original thirty-six feet set forth in the Carey/Rust deed, to a length of ninety feet running the entire length of the second floors of the buildings. This entire ninety foot hallway has been used by appellees for over twenty one years for deliveries and storage.

After considering the testimony of several witnesses, including Henry T. Miklas, Esquire, who reviewed the Carey/Rust deed and traced the easement language through the chain of titles down to the present parties, the trial court concluded that there was an express easement by reservation in appellees favor as to the passageway. Furthermore, the trial court concluded that the remote grantors of both parties extended the easement to a depth of ninety feet for their mutual benefit, and that such an extension was valid. Appellant filed post-trial motions which were subsequently denied by the trial court. This timely appeal followed.

■ Appellant's first issue concerns the express easement by reservation in the Carey to Rust deed of 1862. According to appellant, the easement was abandoned in 1870, and therefore appellees' use of the hallway was a mere license subject to revocation by appellant. Appellees'

position is that the express easement by reservation can be traced through the chains of title to both properties and that the easement is still valid and enforceable. Preliminarily, we note that our scope of review of a final judgment by a trial court sitting without a jury is well defined.

Our appellate role is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, the verdict winner is entitled to have the evidence considered in a light most favorable to himself.

*Piccinini v. Teachers Protective Mutual Life*, 316 Pa.Super. 519, 524–25, 463 A.2d 1017, 1021 (1983).

█ The trial court concluded that the express easement by reservation in the Carey to Rust deed is still valid and enforceable against appellant. Our review of the record indicates that this conclusion is supported by competent evidence and is proper, based upon the applicable principles of law. A review of the language in the Carey to Rust deed demonstrates that an easement by reservation was specifically created for the benefit of both parties.

BEGINNING at the north west corner of lot number nine (9) thence West along Carson Street twenty (20) feet, thence south along the other part of lot number 18 ninety (90) feet thence east twenty feet (20) to the line of lot number nine (9) thence along said line north and west end of a Creek house on lot number nine (9) ninety (90) feet to Carson Street the place of beginning. The said Jane Carey reserves the right and privilege of a three (3) feet alley and beginning on the westerly side of the line of lot number nine (9) thence along Carson Street Westerly three (3) feet into lot number eighteen (18) and thence southwardly preserving the same width of three (3) feet thirty six (36) feet on said lot number eighteen (18) and

only one story high on that said alley may be over builded and joint with the line of lot No. 9 to the benefit use and comfort of both parties or their successors of said properties ...

(Carey to Rust Deed, December 27, 1862, Deed Book Volume 157, page 85).

■ Furthermore, the only "expert" testimony presented by either party at trial was the testimony of Henry T. Miklas, Esquire.[1] Mr. Miklas is a real estate lawyer who has searched approximately 2,500 to 3,000 titles during his career. Mr. Miklas performed an extensive search of the two subject properties, focusing in on the language in the Carey to Rust deed wherein the easement by express reservation was created. The easement related to a three foot alleyway and was for the benefit of the properties at 1304 and 1306 East Carson Street. Mr. Miklas testified that he traced the title down for each of these properties and discovered that the express reservation was contained in successive deeds to appellees' property for seventy-six years and in successive deeds to appellant's property for eighty-four years. It was also Mr. Miklas' testimony that in the deeds which did not contain the express reservation language (after 1938 for appellees' property and after 1946 for appellant's property), the exception clauses included the easement by reservation expressly recited in the former chains of title to both properties. Thus, based upon the physical evidence of the Carey to Rust deed, itself, and

1. To the extent that Mr. Miklas was able to offer his expertise in assisting the trier of fact in evaluating the various deeds and understanding the language contained therein, then his testimony may be characterized as that of an "expert." However, to the extent that Mr. Miklas' testimony offered an opinion as to an ultimate issue of fact, it may not be considered and should be excluded if it would tend to confuse, mislead, or prejudice the trier of fact. *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.*, 344 Pa.Super. 218, 496 A.2d 762 (1985). It appears from the record that the trial court accorded Mr. Miklas' testimony the proper weight. Furthermore, there was no objection at trial to Mr. Miklas' testimony. Thus, while we characterize Mr. Miklas' testimony as that of an "expert," we do so cautioning that as an expert his opinions would not suffice to resolve ultimate issues of fact.

upon the testimony of a real estate lawyer who traced the chain of title in both properties, the trial court was presented with competent evidence from which to conclude that the express easement was still valid.

■ Based upon the facts presented, the Honorable Richard G. Zeleznik summarized the applicable law and concluded that appellant took title to her property subject to the easement in the hallway. In the words of Judge Zeleznik:

A purchaser of land subject to an exception, restriction, or servitude which appears in the line of title, takes subject to the servitude even without actual knowledge of its existence. The grantee in a deed must search for a conveyance or encumbrance from every prior holder of his title. The record is constructive notice of an easement to a subsequent purchaser. Once having received such constructive notice, the grantees of the land subject to the restriction [appellant] are in no position to question the existence of the easement and her property at 1304 must submit to its burden under the covenant running with the land. A grantee is chargeable with notice of everything affecting his title which *could be* discovered by an examination of the deeds and records. *Piper v. Mowris*, [466 Pa. 89] 351 A.2d 635 (Pa.Supreme Court 1976); *Vinso v. Mingo*, 162 Pa.Superior 285, 57 [sic] A.2d 583 (1948); *Owens v. Holzheid*, [335 Pa.Super. 231] 484 A.2d 107 (1984).

(Trial court opinion, September 6, 1990 at 4–5). Clearly, the trial court committed no error of law in reaching the conclusion that appellant was on constructive notice of the easement by reservation in the chain of title to her property, and therefore we will affirm that decision by the trial court.

Appellant's second issue is closely related to her first. Appellant argues that were this court to agree with her first argument that there is no valid express easement by reservation still in existence, then we should also conclude that there is no easement by either implication or prescription, as well. However, because we have already held that there presently exists a valid express easement by reserva-

tion and that appellant is subject to the terms of that express easement, there is no need to address the issues of whether there is an easement by implication or prescription.

Appellant's third issue concerns the length of the easement. According to appellant, the original express easement by reservation in the Carey to Rust deed, only covered a distance of thirty-six feet and did not include the second floor landing. Thus, appellant maintains that the trial court erred in concluding that the easement extended the entire length of the buildings, ninety feet, and included the second floor landing. While it is true that the original easement was only for a distance of thirty-six feet, that distance has been subsequently lengthened to encompass the entire length of the buildings by way of an easement by implication. An easement by implication exists:

> [W]here an owner of land subjects part of it to an open, visible, permanent, and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right-of-way.

*Burns Manufacturing Co. v. Boehm*, 467 Pa. 307, 314, 356 A.2d 763, 767 (1976). In the present case, the undisputed testimony of record was that the entire ninety foot hallway in question, including the second floor landing, had been used by the owners and occupants of 1306 East Carson Street for ingress and egress and storage from a period of 1945 till present. Thus, although the original express easement by reservation only called for an easement in the hallway to a distance of thirty-six feet, that distance was subsequently lengthened to ninety feet and included the second floor landing, by means of an easement by implication. Therefore, the order of the trial court was correct in all respects.

Order affirmed. Jurisdiction relinquished.