J. A26002/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALBERT E. LESH, ET AL. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID W. LYONS, | : | No. 2121 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered March 23, 2015,
in the Court of Common Pleas of Perry County
Civil Division at No. LP-QT-2000-00011

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 30, 2015**

David W. Lyons ("appellant") appeals from the judgment entered by the Court of Common Pleas of Perry County granting Albert E. Lesh and his wife, Sharon E. Lesh ("appellees"), an express 30-foot wide easement across appellant's property for the purposes of ingress and egress to their property.

In 1957, the Loysville Community Club acquired title to approximately 151 acres of land located in Tyrone Township, Perry County, Pennsylvania (hereinafter the "Mother Tract").

In 1964, the Loysville Community Club conveyed a long, rectangular tract containing approximately 10.5 acres to Norman and Roberta Metz ("1964 Metz Deed").  The deed further "granted the right of ingress and egress over and upon a 30-foot [wide] road or driveway which leads from Route 274 to the southeastern corner of the land hereby conveyed."  (Deed,

---

* Retired Senior Judge assigned to the Superior Court.

10/1/64 at 1; Reproduced Record (R.R.) at 1b.) Attached to and recorded with the 1964 Metz Deed was a drawing of a long rectangular tract of land, with a right-of-way located in the far right-hand side which connected the southeastern point of the property to Route 274 through land still owned by Loysville Community Club.



DRAFT of 10.5 ACRES ± IN TYRONE TWP., PERRY. CO.,
PA. SURVEYED Sept. 17, 1964, for NORMAN R. MATZ.
PURCHASED from LOYSVILLE Community Club INC.
                                    By Earl D. Palm (Surv.)

By Deed dated March 13, 1967, the Loysville Community Club conveyed a second property to the Metzes (located west of the 10.5-acre tract already owned by the Metzes) which consisted of 5.5 acres ("1967 Metz Deed"). The 5.5-acre tract was contiguous to the 10.5-acre tract and the properties shared a common boundary line. In the 1967 Metz Deed, the Loysville Community Club "granted and conveyed" a "right of ingress and egress over and upon a 30-foot wide road or driveway which leads from State Route 274 to" the property. The deed, however, did not specify the location of the road or include a metes and bounds description. This is the easement at issue in this appeal:

> FURTHER GRANTING AND CONVEYING to the grantees herein, their heirs and assigns, the right of ingress and egress over and upon a 30-foot road or driveway which leads from State Highway Route 274 to the land hereby conveyed.

Deed, 3/13/67 at 1; R.R. at 10a.

In 1972, the Loysville Community Club conveyed a 3.05-acre tract to William and Ruby Clark ("1972 Clark Deed"). This tract was located just below the Metzes' 5.5-acre tract, between the Metzes' 5.5-acre tract and Route 274. There was no mention of an easement or right-of-way which encumbered the property.

By deed dated April 25, 1986, the Clarks conveyed their 3.05-acre parcel to appellant ("1986 Lyons Deed"). Like the 1972 Clark Deed, the

1986 Lyons Deed from the Clarks to appellant did not mention an easement or right-of-way which encumbered the property.

By deed dated March 22, 2000, the Metzes conveyed their two parcels (the 5.5-acre tract and the 10.5-acre tract) to appellees ("2000 Lesh Deed"). The 2000 Lesh Deed included the conveyance of both tracts. With respect to the 10.5-acre tract ("Tract 1"), the deed contained the following language which conveyed a right of ingress and egress over a 30-foot wide road or driveway from Route 274 to the southeastern corner of the property:

> Further granting and conveying to the grantees herein, their heirs and assigns, the right of ingress and egress over and upon the 30-foot road or driveway which leads from Route 274 to the southeastern corner of the land hereby conveyed.

Deed, 3/22/00 at 1; R.R. at 13a.

With respect to the 5.5-acre tract ("Tract 2"), the 2000 Lesh Deed included the following language which conveyed a right of ingress and egress over a 30-foot wide road or driveway from Route 274 to the property. Once again, this deed did not indicate the location of the easement; it was not described in terms of metes and bounds:

> Further granting and conveying to the grantees herein, their heirs and assigns, the right of ingress and egress over and upon a 30-foot road or driveway which leads from State Highway Route 274 to the land hereby conveyed.

Deed, 3/22/00 at 2; R.R. at 14a.

In 2000, appellant was informed by appellees that they purchased the two lots from the Metzes and that appellees had a right-of-way through his property to Route 274. When appellant refused to recognize the right-of-way, appellees filed an action to quiet title. A non-jury trial was held on June 11, 2014.

At trial, appellant argued that it was not clear from the 1967 Metz Deed that an easement was granted over his property. There was no drawing or description of the location of the easement and the language granting the easement itself was ambiguous because it could have been referring to the easement granted and conveyed in the 1964 Metz Deed. He also argued that his own deed, and that of his predecessor, made no mention of any easement burdening his property. He further argued that the easement over his property never physically existed and was never used to access the 5.5-acre tract.

Appellant testified that at the time he purchased his property, he was not informed that there was an easement across his property, and he did not perform a title search or obtain title insurance to have a title search performed. (Notes of testimony, 6/11/14 at 78, 81; R.R. at 100a, 103a.)

Appellees presented the testimony of Thomas Palm, a qualified land surveyor, who prepared a Plot Plan in February 2001 based on the information from the aforementioned deeds. Palm's Plot Plan was submitted as Plaintiff's Exhibit 2. (Attached to appellees' brief as Exhibit "A.")



Palm opined that the right of ingress and egress originally conveyed by the 1964 Metz Deed was not the same as the one conveyed by the 1967 Metz Deed. Palm opined, based on plans and the language of the Deeds, that there were two completely different easements that were conveyed by the Loysville Community Club at different times. Palm explained that Loysville Community Club was only authorized to convey an easement over land that it owned. (Notes of testimony, 6/11/14 at 15; R.R. at 57a.) By 1967, the Loysville Community Club had already relinquished its ownership interests in the parcel of land deeded in 1964. It belonged to the Metzes. The Loysville Community Club could not, *via* the 1967 Metz Deed, convey an easement *to* the Metzes *through* land owned by the Metzes. Palm concluded that the right of ingress and egress conveyed by the 1967 Metz Deed had to pass through land owned by the Loysville Community Club in 1967 and that was the 3.05-acre tract. (*Id.* at 16; R.R. at 58a.) Palm explained at the time of the 1967 conveyance, there was a subdivision just south of the 3.05-acre tract which included an existing 30-foot wide right-of-way between plots 10 and 11 connecting Route 274 to appellee's 3.05-acre property. Palm testified that the right of ingress and egress conveyed by the 1967 Metz Deed through the 3.05-acre tract was directly in line with the existing road to Route 274. (*Id.* at 16-17; R.R. at 57a-58a.) Palm further testified that anyone performing a title search would have been

able to go "back to the 1967 Deed and [be] put . . . on notice of the right of way." (*Id.* at 20; R.R. at 62a.)

Appellants also presented the testimony of Norman Metz. He operated a private airstrip on the 10.5-acre tract. He later purchased the 5.5-acre tract to provide a buffer for his airstrip "so nobody would build there." (*Id.* at 46; R.R. at 50b.) He never built on the 5.5-acre tract so there was never an issue with respect to accessing Route 274 from it. Mr. Metz knew that he was granted a right-of-way from Route 274 to the larger parcel. With respect to the 5.5-acre parcel, he testified "I thought we had a right of way to it, but I never knew where it was. And I never pressed the fact because I didn't want it open, because I knew people would be running around and using it." (*Id.* at 44; R.R. at 48b.)

On February 20, 2015, the trial court found that appellees possessed a 30-foot wide express easement leading directly from Route 274 across appellant's 3.05-acre property to the 5.5-acre parcel described as Tract 2 in the 2000 Lesh Deed transferring the property from the Metzes to the Leshes. The trial court's conclusion that the easement existed was based on the rules of construction, the language contained in the 1964 and 1967 Metz Deeds, the 2000 Lesh Deed, the inability of the Loysville Community Club to grant an easement over land it had relinquished rights to, and the testimony of Mr. Metz who confirmed the existence, grant, and use of the easement at issue. The trial court also relied on the testimony of Palm and Palm's Plot

Plan to make a determination of the location of the easement. The trial

court wrote:

> Further, the clear, express language of the 1967 Metz deed states that the 30 foot road leads from "State Highway Route 274 to the land hereby conveyed." Therefore, the easement can only lead from 274 directly to the Metz 1967 property. Plaintiffs' Exhibit 2, the Palm Plot Plan, clearly identifies that the only way to access Route 274 from the Metz property is directly southeast. There is already an existing 30 foot right of way between lots 10 and 11 to the 3.05 acre parcel of land. Thus, the most logical and direct route from Route 274 to the Metz property is to simply extend the current right of way through the 3.05 acre Lyons property to meet the Leshs' second parcel.

Trial court opinion, 2/22/15 at 3.

Appellant raises four issues on appeal:

1. Did the Trial Court commit an error of law or abuse of discretion in finding that an express easement crosses Mr. Lyons' land where no plan or survey exists showing the presence or location of such an easement and neither his Deed nor chain of title references an express easement burdening his property?

2. Did the Trial Court commit an error of law or abuse of discretion in finding that an express easement crosses Mr. Lyons' land when a recorded Preliminary and Final Subdivision Plan prepared by the parties' common grantor dated February 9, 1981, identifies all other express easements involving the parties' properties but fails to include any reference or drawing to such an express easement?

3. Did the Trial Court commit an error of law or abuse of discretion in its Order of July 7, 2014, finding that an express easement exists and

- 10 -

crosses Defendant's land "as described in Palm Plot Plan" when no such exhibit was entered into evidence and no such document is recorded?

4. Did the Trial Court commit an error of law or abuse of discretion by finding that an express easement crosses Mr. Lyons' land when the burden of proof was upon Appellees, and express easements being governed by the law of contracts are limited to the size expressly granted in a document, and where doubt exists are construed against the drafter?

Appellant's brief at 2.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. *See Porter v. Kalas*, 597 A.2d 709, 711-712 (Pa.Super. 1991). The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. *See id.* Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner. *See id.*

The same rules of construction that apply to contracts are applicable in the construction of easement grants. *McNaughton Properties, LP v. Barr*, 981 A.2d 222 (Pa.Super. 2009); *Zettlemoyer v. Transcontinental Gas Pipeline Corp.*, 657 A.2d 920 (Pa. 1995). Therefore, to ascertain the

nature of an easement created by an express grant, the intention of the parties will be determined from the language of the instrument. *Forest Glen Condominium Ass'n v. Forest Green Common Ltd. Partnership*, 900 A.2d 859 (Pa.Super. 2006); *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547 (Pa.Super. 2004); *Gateway Motels, Inc. v. Duquesne Light Co.*, 500 A.2d 1230 (Pa.Super. 1985).

When the language in the grant of an easement is ambiguous, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. If the language of a deed granting an easement is ambiguous regarding the location, size, or purpose of an easement, then the intent of the parties as to the original purpose of a grant is a controlling factor in determining the extent of an easement. The intention of the parties as to the original purpose of a grant of an easement is determined by a fair interpretation and construction of the grant and may be shown by the words employed together with reference to the attending circumstances known to the parties at the time the grant was made. *PARC Holdings, Inc. v. Killian*, 785 A.2d 106 (Pa.Super. 2001); *Merrill v. Mfgrs. Light and Heat Co.*, 185 A.2d 573, 576 (Pa. 1962) ("Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances."). Whether an ambiguity exists is a question of

law subject to plenary review. *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa.Super. 1999). However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier-of-fact. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (Pa. 1986).

## I.

Appellant argues that the trial court erred in finding that an express easement exists over his property. He argues that no drawing, plan, survey, or map shows the location of the supposed easement. The supposed easement does not appear in the Preliminary and Final Subdivision Plan prepared in 1981 which shows other easements. He claims that the two Metz parcels (conveyed in 1964 and 1967) were contiguous and shared a border and suggests that the right of ingress and egress referenced in the 1967 Metz Deed was actually a reference to the right-of-way granted by the 1964 Metz Deed, which connected the southeastern corner of the 10.5-acre property to Route 274. He supports his claim with the argument that no new drawing was prepared or recorded with the 1967 Deed, and no location was specified. He believes that this was because the 5.5-acre tract was meant to share the same right of ingress and egress which existed on the 10.5-acre tract. He also contends that the easement language relied upon by appellees only appears in the various deeds in the chain of title conveying the 5.5-acre tract. However, the deeds in the chain of title conveying his

3.05-acre tract make no mention whatsoever of any easement encumbering or burdening the property.

First, addressing the lack of a plan or map, Pennsylvania law is clear that identification or marking of the exact location of a right-of-way is not a relevant consideration in the determination of the validity of the right-of-way. In creating an easement, it is not necessary to designate with definiteness the part of the land to which the right attaches. *Ozehoski v. Scranton Spring Brook Water Company*, 43 A.2d 601 (Pa.Super. 1945). The absence of a drawing, plan, survey, or map does not necessarily mean that an easement was not conveyed.

Clearly, the 1967 Metz Deed conveyed an easement of some sort which benefitted the 5.5-acre tract. The intended use of the easement was to serve as a means of ingress and egress between the 5.5-acre tract and Route 274. The wording of the easement, however, is ambiguous because, as the trial court aptly pointed out, if this language was intended to convey a right-of-way, it was not done "appropriately" because it does not "say where the right of way is." (Notes of testimony, 6/11/14 at 82; R.R. at 104a.) The issue before the trial court then was twofold: (1) whether the 1967 Metz Deed conveyed an easement that was separate and distinct from the easement conveyed in the 1964 Metz Deed; (2) and if so, where was it located?

In resolving this ambiguity and the parties' intent, it was proper to consider extrinsic evidence including the circumstances attending Loysville Community Club's conveyance of the 5.5-acre tract to the Metzes in 1967. Appellees presented testimony of their expert surveyor, Palm, and the testimony of Norman Metz who owned the two parcels and testified as to his knowledge and intentions at the time the conveyances were made.

This court has carefully reviewed the record and finds, to begin with, that the evidence supports the trial court's rejection of appellant's position that the easement referenced in the 1967 Metz Deed and in the 1964 Metz Deed was the **same** one.

The record reveals that in 1967, the Metzes owned the 10.5-acre tract which included a right of ingress and egress over a road or driveway which connected the southeastern corner of that property with Route 274. The Loysville Community Club, in 1967, owned two other parcels: (1) the 5.5-acre tract (which adjoined the 10.5-acre tract), and situated just below that, (2) the 3.05-acre tract. Appellant's position that the easement referenced in the 1967 Metz Deed was actually a reference to the same easement conveyed in the 1964 Metz Deed cannot be correct. It is fundamental that one may not grant an easement over property that he or she does not own. **Woodlawn Trustees, Inc. v. Michel**, 211 A.2d 454 (Pa. 1965).

- 15 -

In 1967, the Loysville Community Club had no ownership interest and, consequently, no authority to convey any further right-of-way across the 10.5-acre parcel which it did not own. In 1967, however, the Loysville Community Club still owned the 3.05-acre tract and had the ability to convey a right-of-way over that parcel to benefit the new owner of the 5.5-acre tract. This chronological evidence of the order in which the parcels were conveyed from the Mother Tract supported the trial court's determination that there were two separate easements. This finding is further supported by the plain language contained in the 2000 Lesh Deed which confirms two separate easements leading to two separate tracts of property.

Further, a simple comparison of the 1964 and 1967 Metz Deeds indicates that there are two separate easements. The language is different. The easement in the 1964 Metz Deed grants an easement to the "southeastern corner" of the property conveyed. This coincides squarely with the drawing attached to and incorporated into the 1964 Metz Deed which shows a right-of-way running from Route 274 to the southeastern corner of the 10.5-acre tract. The 1967 Metz Deed, on the other hand, states that the 30-foot wide road leads from "State Highway Route 274 to the land hereby conveyed." This language, when it is considered in context of the then-existing subdivision and plan of lots as depicted in Palm's Plot Plan, unmistakably leads to the conclusion that the parties intended that there be a second easement which directly connected the 5.5-acre tract to

Route 274 *via* an existing right-of-way through lots 10 and 11. Further, the grantor in both deeds, Mr. Metz, testified that there were two separate easements.

With respect to the location of the easement, the trial court concluded, based on the uncontradicted testimony of Palm, that the only way to access Route 274 from the 5.5-acre tract was to proceed directly southeast, where there was an already existing 30-foot wide right-of-way between lots 10 and 11 to the 3.05-acre parcel of land. Thus, the trial court concluded, at the time of conveyance, the most logical and direct route at the time of conveyance from Route 274 to the Metz property was to simply extend the current right-of-way through appellant's 3.05-acre tract to meet appellees' 5.5-acre tract. We find the evidence supported the trial court's conclusion with respect to the location of the easement conveyed with the 5.5-acre parcel in 1967.

Appellant also contests the validity of appellees' easement over his property on the basis that there was no mention of any easement or right-of-way which burdened or encumbered the property in the 1986 Lyons Deed or the 1972 Clarks Deed. He claims that since the easement was not mentioned in his deed or in the deed of his predecessor (Clark), he did not take subject to it. We do not agree.

> The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly

> recorded, the record is constructive notice to a subsequent purchaser of the later parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.

**Piper v. Mowris**, 351 A.2d 635, 639 (Pa. 1976).

Here, the Loysville Community Club conveyed title to the 5.5-acre tract with an easement which affected the Community Club's other 3.05-acre tract. That was the 1967 Metz Deed. The 1967 Metz Deed gave constructive notice of the easement to all subsequent purchasers of the 3.05-acre tract, including appellant. Constructive notice of the easement, in this case, put appellant on inquiry before the purchase of his parcel, and such inquiry would have informed him as to the location of the easement over his land from the 1967 Metz Deed.

## II.

In his next issue, appellant argues that the trial court erred because it did not consider a February 9, 1981, Subdivision Plan which was prepared by Palm's father, which did not mention any easement over appellant's property.

As appellees point out, appellant failed to advance any argument or question any witness about any aspect of the February 9, 1981 plan. Appellant failed to introduce the February 9, 1981 plan into evidence. He failed to authenticate or offer any context for the February 9, 1981 plan. He

did not identify it during discovery, so appellees were never provided with an opportunity to challenge any aspect of the February 9, 1981 plan during the course of litigation before the trial court. The first time appellant introduced the plan was in his Motion for Post-Trial Relief.

Pa.R.Civ.P. 227.1(b)(1) provides that post-trial relief may not be granted unless the grounds "if then available, were raised in pretrial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial." Appellant had every opportunity to introduce the February 9, 1981 plan at trial but failed to do so. His failure to do so resulted in a waiver of the issue.

## III.

In his third issue, appellant contends that the trial court erred when it found that an express easement exists over his property "as described in Palm Plot Plan." Appellant contends that the drawing does not identify the metes and bounds of the alleged easement. The drawing also included the caveat: "NO PLAN OR SURVEY HAS BEEN FOUND WHICH SHOWS THE LOCATION OF THE RIGHT OF WAY . . ." It also identifies the asserted easement as a "PROPOSED LOCATION." Appellant contends that the trial court erred when it relied on the drawing. We disagree.

At trial, the appellant accepted Palm as a qualified land surveyor and was the only expert accepted by the court as an expert at trial. (Notes of

testimony, 6/11/14 at 7; R.R.at 49a.)  The Plot Plan was based on Palm's expert review of multiple deeds and the layout of the lots along Shermans Valley Avenue in the area of the subject properties.  As Palm testified, a 30-foot right-of-way existed from Route 274 between other parcels to the tract now owned by appellant and was the only access point to appellant's property from Route 274.  (*Id.* at 16-17; R.R. at 58a-59a.)  He explained that he had a "proposed location for the intended right of way depicted on [his] plot plan."  (*Id.* at 17; R.R. at 59a.)  The proposed location was "directly in line with the 30-foot right-of-way going out to 274."  (*Id.* at 17; R.R. at 59a.)  The testimony and the drawing were clearly meant to aid the court in its interpretation of the documents and to visualize the locations of the existing lots and rights-of-way at the time of the relevant conveyances. We find no error in the trial court's reliance on the Plot Plan, in part, in forming its decision.  As noted, the trial court relied on the entire evidentiary record and applied the appropriate legal precedent.

**IV.**

In his final issue, appellant alleges that the burden was on appellees to prove the existence and location of the express easement and the trial court erroneously placed the burden on him to perform a title search and prove the asserted easement does not exist.  We do not believe the issue merits any discussion beyond pointing out that the two concepts are completely unrelated.  One burden relates to a movant's burden of proof at trial.  The

- 20 -

other relates to a grantee's burden to perform his own chain of title search in order to gain knowledge of any restrictions or servitudes which may appear in his line of title.

Under these circumstances, the trial judge was correct in concluding that appellees have an express easement over appellant's property.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015